*KSC/06.09.2022*

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

*Kim Y. Oldham*
*Assistant United States Attorney*
*Kim.Oldham@usdoj.gov*

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4944*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

USDC- BALTIMORE
'22 AUG 22 PM12:22

June 9, 2022

Teresa Whalen
801 Wayne Avenue, Suite 400
Silver Spring, MD 21201
Glen Arm, Maryland 21057

Re: United States v. George Fields
Criminal No. 21-CR-0351-GLR

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, George Fields (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by June 17, 2022 it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense(s) of Conviction

1. The Defendant agrees to plead guilty to Counts One and Three of the Indictment, which charges the Defendant with Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2, and Using, Carrying, Brandishing, Discharging a Firearm During and in Relation to a Crime of Violence, Resulting in Death, in violation of 18 U.S.C. § 924(c), 18 U.S.C. § 924(j), and 18 U.S.C. § 2. The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

## Elements of the Offense(s)

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Count One: Hobbs Act Robbery Conspiracy, 18 U.S.C. § 1951(a)

That on or about the dates alleged in the Indictment, in the District of Maryland:

a. Two or more persons agreed to commit a Hobbs Act robbery,
b. The Defendant knew the essential objective of the conspiracy; and

c. The Defendant knowingly and voluntarily joined the conspiracy.

Count Three: Using, Carrying, Brandishing Discharging a Firearm During and in Relation to a Crime of Violence, Resulting in Death, 18 U.S.C. § 924(c) and 18 U.S.C. § 924(j)

That on or about the dates alleged in the Indictment, in the District of Maryland:

a. The Defendant committed a crime of violence for which he might be prosecuted in a court of the United States, namely, Hobbs Act robbery as charged in Count Two of the Indictment,
b. The Defendant used, carried, brandished, and discharged a firearm during and in relation to such crime,
c. The use of the firearm caused the death of a person, namely, Jordan Daniel; and
d. The killing was murder as defined in 18 U.S.C. § 1111.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1951(a) | N/A | 20 years | 3 years | $250K | $100 |
| 3 | 18 U.S.C. § 924(j) | 10 years | Life or death[1] | 5 years | $250K | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

---

[1] The United States Attorney's Office has been authorized not to seek the death penalty against the Defendant.

   d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a. This Office and the Defendant further agree that with respect to Hobbs Act robbery conspiracy, the applicable base offense level is **43** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2B3.1(c), 2A1.1 and 2X1.1(a) because a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111.

b. With respect to using, possessing, brandishing, discharging a firearm during and in relation to a crime of violence resulting in death, the applicable base offense level is **43** pursuant to U.S.S.G. §§ 2K2.1(c)(1)(B) and 2A1.1.

c. Pursuant to the grouping rules of U.S.S.G. § 3D1.2, Counts One and Three "group," and the combined offense level remains at **43.**

d. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. The adjusted offense level is **40.**

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

11. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Court Not a Party

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

19. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Christina A. Hoffman
Kim Y. Oldham
Assistant United States Attorneys

/S/
Christina A. Hoffman
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6-28-22
Date

George Fields
George Fields

    I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/28/22
Date

Teresa Whalen, Esquire

**ATTACHMENT A**

**STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On September 29, 2020, the Defendant, George Fields, a/k/a "Chin," conspired with Joseph Williams, a/k/a "Blue," and Deron Johnson, a/k/a "DJ," to rob 16-year-old Jordan Daniel of drugs and drug proceeds. During the course of the robbery, Williams shot and killed Daniel.

The robbery and murder took place shortly before 5:00 AM in the parking lot of America's Best Value Inn at 6510 Frankford Avenue in Baltimore, Maryland. Williams had been staying at the hotel for several months under a fictitious name and selling drugs on the premises. On the morning in question, Johnson gave Daniel a ride to the hotel on the ruse that Daniel would be selling drugs to the Defendant and Williams.

A hotel surveillance camera captured the entire incident. Johnson and Daniel pulled into the hotel parking lot in Johnson's Honda Odyssey minivan at approximately 4:24 AM. Johnson was in the driver's seat, and Daniel was in the front passenger seat. The Defendant and Williams approached the van. The Defendant held out money as though he was ready to make a purchase from Daniel. Then the Defendant and Williams began robbing Daniel. During the robbery, Johnson walked to the rear of the van and smoked. The Defendant and Williams pinned Daniel down in the front passenger seat of the van and went through his pockets. Daniel struggled and flailed his arms and legs. Williams pulled out a handgun and pointed it at Daniel's chest area as he struggled. Then Williams fired a single shot into Daniel's chest at close range. Daniel stumbled away from the van and collapsed to the ground. Johnson got back into the driver's seat of the van, and Williams and the Defendant got into the front and rear passenger seats, respectively. They drove away from the scene.

The first 911 call came in at approximately 4:54 AM, and medics arrived on scene at approximately 4:59 AM. Daniel sustained a single, through-and-through gunshot wound to the upper right chest and died at Johns Hopkins Hospital later that day. No drugs, money, or cell phone were recovered from his personal effects.

Later that morning, while police were still processing the crime scene, Johnson, Williams, and the Defendant arrived back at the hotel parking lot in Johnson's Honda Odyssey minivan. All three re-entered the hotel together. Recognizing the van from the security camera footage, BPD detectives towed the vehicle and detained Johnson. They later executed a search warrant on the van and recovered a single bullet from the front row carpet.

On October 1, 2020, BPD detectives executed a search warrant on Johnson's cell phone. The phone contained evidence of the plot to rob Daniel. Highlights of the evidence include the following:

- At 3:05 AM, Johnson received a text from Williams that said: "Yu posed to be my dog I goin get a stem for yu n yu left man I mean dis yo fuc yu don't come to my room n if I catch yu on my floor ima smacc da shit out yu mattafact anymore best inn for yu only reason I'm out cause I'm trying find a lic dummy." A "lick" is a commonly used street term for a robbery.

- Between 3:02 AM and 4:13 AM, Johnson exchanged several calls and text messages with the victim, Daniel.

- In the hours before and after the murder, Johnson exchanged several calls with phone numbers used by Williams.

- On October 1, 2020, Johnson received a text message that said: "Yo saw your boy blue [*i.e.*, Williams] at Frankford like ain't nothing happened what an asshole after you shoot a kid bro please don't hang around that dude or you going to be in a cell right next to him bro you got a family to lose he has nothing."

- Johnson's phone contained photographs, dated September 25, 2020, depicting Johnson standing with the Defendant and Williams. In the photographs, Williams was wearing a distinctive black satchel matching the one he wore in the murder footage (and from which he appeared to retrieve the handgun used to shoot the victim).

- The contact list in Johnson's phone contained a contact for the Defendant.

A cell phone was also seized from Williams at the time of his arrest and was searched pursuant to a federal search warrant. In the month or so leading up to the murder, Williams exchanged dozens of messages establishing that he was staying at the America's Best Value Inn, that he was dealing drugs out of the hotel, and that he was in dire need of money. The phone also contained messages immediately following the murder in which Williams made plans to dispose of the murder weapon and directed another individual to destroy evidence.

The Defendant admits that he conspired with Williams and Johnson to take Daniel's property, against his will, by actual or threatened force, violence, or fear of injury. The Defendant further admits that as a result of his actions, interstate commerce, or an item moving in interstate commerce, was obstructed, delayed, or affected. Specifically, Daniel was robbed of drugs, drug proceeds, and a cell phone. The Defendant further admits that during and in furtherance of the robbery, Williams used, carried, brandished, and discharged a firearm, resulting in Daniel's death, which constituted murder.

SO STIPULATED:

/S/
Christina A. Hoffman

Kim Y. Oldham
Assistant United States Attorneys

George Fields
Defendant

Teresa Whalen
Counsel for Defendant